NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1421
_____

LUIS RAMOS CRUZ,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition For Review of an Order of the Immigration Court
(Agency Case No.: A087-622-304)
Immigration Judge: Alice Song Hartye
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 20, 2020
_____

Before: GREENAWAY, JR., COWEN, and FUENTES, *Circuit Judges.*

(Opinion filed:  January 8, 2021)
_____

OPINION**
_____

FUENTES, *Circuit Judge.*

_____

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Luis Ramos Cruz petitions for review of an Immigration Judge's ("IJ") determination, in a reasonable fear proceeding, that he was not entitled to relief from reinstatement of his prior removal order. For the following reasons, we will deny the petition.

I.

Ramos Cruz is a native and citizen of Honduras. In 2009, he unlawfully entered the United States and was served with an expedited order of removal and was removed. Later that same year, however, he entered the United States without inspection. Ramos Cruz lived in Philadelphia without incident until early 2020, when he was apprehended by Immigration and Customs Enforcement ("ICE") agents while they were conducting an unrelated investigation, and was served with an order reinstating the 2009 removal order. Upon apprehension, Ramos Cruz expressed that he was afraid of returning to Honduras. Accordingly, he was referred to an asylum officer for a reasonable fear interview pursuant to 8 C.F.R. § 241.8(e).

At the interview, Ramos Cruz, who was represented by counsel, told the asylum officer that he feared returning to Honduras because he had been attacked by a group of unidentified drug dealers there. He believed that the drug dealers targeted him because they mistook him for his brother, who had previously been part of their group and was selling drugs in their territory. Although the drug dealers attempted to stab Ramos Cruz in the stomach, he was able to partially deflect the attack and was stabbed in the hand instead.

2

He reported the incident to the police and was told that they would investigate the matter. Ramos Cruz, however, did not believe they would ultimately take any steps to protect him because of police corruption in the country, and he left Honduras before receiving any update as to the progress of their investigation. His mother, who stayed in Honduras, followed up on the case a year after the incident, and told Ramos Cruz that, at that time, the police had not identified his attackers.

Ramos Cruz told the asylum officer that he remained fearful of returning to Honduras because the drug dealers might again mistake him for his brother, who had since left the country, and try to kill him. At the end of the interview, Ramos Cruz, through counsel, argued that he had shown a reasonable possibility that he was eligible for withholding of removal under 8 U.S.C. § 1231(b)(3) based on his membership in a protected social group comprised of his immediate family members. He also argued that he had shown a reasonable possibility of eligibility for protection under the Convention Against Torture ("CAT") because he would likely be tortured if returned to Honduras given the impunity offered to criminal organizations there.

The asylum officer disagreed with both arguments. He found that the harm Ramos Cruz had experienced and still feared was not on account of a protected characteristic, as required for withholding of removal under 8 U.S.C. § 1231(b)(3). The asylum officer also determined that Ramos Cruz had not shown a reasonable possibility of eligibility for CAT relief because, among other reasons, he could not show that the drug dealers acted with the consent and acquiescence of the Honduran government.

3

Ramos Cruz sought review of the decision pursuant to 8 C.F.R. § 208.31(g), and the IJ affirmed. The IJ agreed that Ramos Cruz did not face a reasonable possibility of persecution because the proposed social group was not cognizable. The IJ also agreed that Ramos Cruz had not established a reasonable possibility that he would be tortured by or with the acquiescence of the Honduran government, particularly because he was unable to establish a connection between the drug dealers who had harmed him and the Honduran police. In so finding, the IJ acknowledged that crime and corruption were prevalent in Honduras, but stated that "countries try to take steps to deal with those issues."[1]

Ramos Cruz timely filed this petition for review.

## II.[2]

On appeal, Ramos Cruz argues that: (A) the IJ erred in concluding that he did not show a reasonable possibility of being persecuted or tortured upon removal to Honduras; and (B) the IJ violated his Due Process rights by relying on extrinsic country condition evidence to deny his CAT claim. We address each argument in turn.

## A.

Here, the record provides ample support for the IJ's determination that Ramos Cruz failed to show a reasonable possibility of persecution or torture. Though the parties dispute the standard of review that applies to an IJ's negative reasonable fear

---

[1] A.R. 20.

[2] We have jurisdiction to review final orders of removal, including reinstatement orders and negative reasonable fear determinations. *See* 8 U.S.C. § 1252(a)(1); *Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018).

determination, this question was recently resolved in *Romero v. Attorney General*, which held that the substantial evidence standard applies.[3] "Under this 'extraordinarily deferential standard,' we uphold the IJ's findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"[4]

First, substantial evidence supports the IJ's determination that Ramos Cruz failed to show a reasonable fear of persecution based on a protected characteristic. Ramos Cruz stated repeatedly that his fear of returning to Honduras was grounded solely in the concern that the drug dealers would again confuse him for his brother. We have previously found that family membership alone does not qualify as a "particular social group."[5] Similarly, "[c]onflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic."[6] Therefore, substantial evidence supports the IJ's finding that Ramos Cruz did not have a reasonable fear of persecution in Honduras based on a protected characteristic.

Second, substantial evidence also supports the IJ's conclusion that Ramos Cruz failed to show that it is more likely than not that he will be tortured "by or at the instigation of or with the consent or acquiescence of" the Honduran government.[7] As noted by the IJ, Ramos Cruz reported his attack to the police, who stated that they would

---

[3] 972 F.3d 334, 341–42 (3d Cir. 2020).
[4] *Id.* at 340 (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011) (internal quotation marks and citations omitted)).
[5] *See, e.g., id.* at 342–43 (finding that membership in stepdaughter's family did not qualify as a "particular social group").
[6] *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 (3d Cir. 2015).
[7] *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005).

investigate the matter. Though the police had not made an arrest a year after the incident, their failure to do so is, alone, insufficient to establish acquiescence. This is especially the case because, as the IJ also noted, Ramos Cruz could not establish any connection between the particular individuals who targeted him and the Honduran government.[8] Thus, there is no basis to disturb the IJ's determination that Ramos Cruz had not shown a reasonable possibility that he would be tortured upon return to Honduras.

## B.

Finally, Ramos Cruz argues that the IJ violated his procedural Due Process rights by relying on extrinsic evidence to find that he had not shown a reasonable possibility of qualifying for protection under CAT. "Aliens facing removal are entitled to due process,"[9] but must show "substantial prejudice" to "prevail on [due process violation] claims."[10] Our review of these claims is plenary.[11]

---

[8] "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). "The applicant can meet this standard even where the government does not have actual knowledge of the torturous activity if he 'produces sufficient evidence that the government is willfully blind to such activities.'" *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (quoting *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 65 (3d Cir. 2007)). Though Ramos Cruz gave examples of reported police corruption, he was unable to tie this corruption to the particular entity he feared. As such, Ramos Cruz has failed to show a reasonable possibility of meeting this standard.

[9] *Chong v. Dist. Dir.,* 264 F.3d 378, 386 (3d Cir. 2001) (citing *Chlomos v. U.S. Dep't of Justice*, 516 F.2d 310, 313 (3d Cir. 1975)).

[10] *Singh v. Gonzales*, 432 F.3d 533, 541 (3d Cir. 2006) (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005)).

[11] *Id.* (citing *Bonhometre*, 414 F.3d at 446).

Ramos Cruz specifically takes issue with the IJ's statement that "countries try to take steps to deal with [crime and corruption],"[12] because it "relies on information concerning Honduras's efforts to prevent torture that is not in the record."[13]  However, as discussed above, other substantial evidence in the record supports the IJ's determination that Ramos Cruz had not shown a reasonable possibility that he would be tortured for CAT purposes.  Therefore, to the extent the IJ committed any error, Ramos Cruz has failed to show that he was substantially prejudiced by it.

III.

For the foregoing reasons, we will deny the petition for review.

---

[12] A.R. 20.
[13] Petitioner's Br. at 26.